UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID CRANSHAW,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:11-0731** |
| v. | : | |
| | : | **(NEALON, D.J.)** |
| **SHIRLEY MOORE SMEAL,** | : | **(MANNION, M.J.)** |
| **ROBERT COLLINS and SHARON** | | |
| **LUQUIS,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is the defendants' motion to dismiss the plaintiff's complaint. (Doc. No. 17). Based upon the court's review of the motion and related materials, it is recommended that the motion be granted.

By way of relevant background, on April 18, 2011, the plaintiff, an inmate at the State Correctional Institution, Frackville, Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1). On the same day, the plaintiff filed the appropriate prisoner authorization form, (Doc. No. 2), and application for leave to proceed *in forma pauperis*, (Doc. No. 3). As a result, a financial administrative order was issued directing the superintendent/warden at SCI-Frackville to deduct the appropriate filing fee from the plaintiff's inmate account. (Doc. No. 6).

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

By order dated April 28, 2011, it was directed that process issue. (Doc. No. 7).

On July 5, 2011, the defendants filed the instant motion to dismiss the plaintiff's complaint. (Doc. No. 17). A brief in support of the motion was filed on July 19, 2011. (Doc. No. 20). On August 12, 2011, the plaintiff filed a brief in opposition to the defendants' motion to dismiss. (Doc. No. 24).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint. In deciding a motion to dismiss, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). "Factual allegations must be enough to

raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra and providing further guidance on the standard set forth therein).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The plaintiff sets forth the following allegations in his complaint which are taken as true for purposes of considering the instant motion to dismiss. On September 30, 2010, the plaintiff was called back to his cell from his work assignment as a clerk in the kitchen. Corrections Officers McGee and Murphy conducted a search of the contents of his cell. After the search, various items were confiscated from the plaintiff's cell, including an address book, photo albums, a list of names and addresses of Hollywood actor's fan clubs, speadsheets containing the names of various films, and stickers containing the plaintiff's name.

Later that evening, the plaintiff was taken to an interview room where

various of the confiscated items were placed on a table. The plaintiff was questioned by Captain Clark, a security officer, about a letter that he had sent to an individual in Australia which had been returned to the facility, as well as some of the confiscated items. The plaintiff was then accused of using the computer in the kitchen where he worked to make labels for his photo albums. The plaintiff denied the accusation at which time he was returned to his housing unit.

On October 1, 2010, the plaintiff was issued a misconduct report by Correctional Officer Murphy containing seven charges, including "Class I, #35 Refusing to Obey an Order, Class I, #36 Possession of Contraband, Class I, #42 Lying to an Employee, Class I, #45 Failure to report the presence of Contraband, Class I, #46 Theft of Services, Class II, #51 Possession of any items not receipt by the inmate not specifically enumerated as Class I contraband, Class II, #52, Any Violation of Rule or regulation in Inmate handbook not specified as a Class I misconduct charge."

After receiving the report, the plaintiff completed an inmate version of the events. The plaintiff requested that he be allowed to present Mr. Stritz, Food Service Manager, as a witness. The plaintiff indicated that the testimony of Mr. Stritz would support his plea of not guilty to all charges relating to the possession of contraband. The plaintiff further requested to have Mr. Osifat, Principal Education Department, as a witness. According to the plaintiff Mr. Osifat would verify that the plaintiff had limited computer skills and that the

plaintiff was a participant in Mrs. Maran's class whose method it was to have students use the computer and printer to improve their skills.

On or about October 4, 2010, Captain Clark informed the plaintiff that, if it were up to him, he would allow the plaintiff to remove the labels from the photo albums and return them.

On October 12, 2010, the plaintiff attended a hearing on his misconduct before defendant Luquis, the hearing examiner. The hearing examiner was given an envelope containing documents from the plaintiff in support of his version of events. After reviewing the misconduct report, the hearing examiner asked the plaintiff how he pled, to which the plaintiff indicated that he pled not guilty to a portion of charge #36, guilty to charge #45, and not guilty to the remaining charges. The plaintiff was removed from the room for a short period of time and then returned. The hearing examiner accepted the plaintiff's guilty plea to a portion of #36 and #45, and dismissed the remaining charges against the plaintiff. The plaintiff was sanctioned to loss of his job in the kitchen, 45 days disciplinary custody and all contraband was revoked.

The plaintiff filed an appeal of the hearing decision to the Program Review Committee, ("PRC"), which responded on October 20, 2010, that the sanctions imposed were within the guidelines for a Class I misconduct.

The plaintiff filed an inmate request to defendant Collins on November 16, 2010, to have his photographs returned. Defendant Collins replied to the request indicating that he had spoken to Captain Clark and concurred with the

5

Program Review Committee, ("PRC"), that the photographs were considered to be contraband and were to be revoked in accordance with the hearing examiner's decision.

On November 20, 2010, the plaintiff filed a grievance with respect to the matter, which was apparently denied by Mr. Damiter, the Grievance Coordinator, on November 23, 2010. On November 24, 2010, the plaintiff filed a grievance with defendant Collins, who replied on November 30, 2010, also apparently denying the grievance.

The plaintiff appealed the denial of the grievance to the Office of Grievances and Appeals. He received a reply on December 22, 2010, which indicated that the plaintiff could not use the grievance system to appeal the misconduct hearing decision.

As a result, on December 17, 2010, the plaintiff filed a misconduct hearing appeal to defendant Collins. After inquiry into the status of his appeal, on December 30, 2010, defendant Collins indicated that he had not received the misconduct appeal and asked the plaintiff to resubmit the appeal. The plaintiff resubmitted the appeal on January 3, 2011, which was rejected on January 13, 2011, as untimely. The plaintiff was informed that his property would be preserved pending exhaustion of all appeals.

The plaintiff filed an appeal of this decision to the Office of the Chief Hearing Examiner, Robert B. MacIntyre, who dismissed the appeal.

The plaintiff indicates that he submitted a number of letters to defendant

Smeal, Executive Deputy Secretary of the Pennsylvania Department of Corrections, relating to his complaints to no avail.

Based upon the above allegations, the plaintiff alleges that his due process rights were violated. He is requesting compensatory and punitive damages. In addition, the plaintiff is seeking to have his property returned and to have his disciplinary record expunged.

In their motion to dismiss, the defendants argue that the plaintiff's allegations concerning personal property deprivation are not actionable where an adequate post-deprivation remedy was available to him. (Doc. No. 20, pp. 3-4).

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. In the context of confiscating an inmate's property, however, the Supreme Court of the United States has held that meaningful post-deprivation remedies for the loss provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Barr v. Knauer, 321 Fed. Appx. 101, 103 (3d Cir. 2009); Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

The Third Circuit Court of Appeals has held that the Department of Correction's grievance procedure pursuant to DC-ADM 804 provides an

adequate post-deprivation remedy, see McEachin v. Beard, 319 F.Supp.2d 510, 514-15 (E.D.Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)), and that the existence of this post-deprivation remedy forecloses any due process claim.

The plaintiff's ability to pursue the post-deprivation remedy of the DOC grievance procedure, which he admits that he resorted to in his complaint, renders him unable to state a procedural due process claim in this action. Although the plaintiff argues that the post-deprivation remedies were not adequate because his grievances were rejected on procedural grounds, (i.e., they were untimely), the fact is that post-deprivation remedies were available, regardless of the fact of whether the plaintiff properly utilized those remedies. Therefore, the defendants' motion to dismiss the plaintiff's complaint should be granted in this respect.

The defendants also argue that defendant Luquis did not violate the plaintiff's civil rights in the manner in which she conducted the plaintiff's misconduct hearing. (Doc. No. 20, pp. 4-6). To this extent, the defendants argue that the plaintiff's complaint reflects that the plaintiff was only sanctioned on those charges to which he admitted guilt. Since there is no indication from the plaintiff's complaint that he is challenging the voluntariness of his guilty plea, the court agrees that the conduct of the hearing need not be examined.

In relation to the hearing, the defendants also argue that the sanctions

8

imposed did not violate the plaintiff's due process rights. The court agrees. Specifically, with respect to the 45 days of disciplinary segregation, an inmate's due process rights are not triggered unless the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Young v. Beard, 227 Fed. Appx. 138, 141 ( 3d Cir. 2007) (quoting Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003)); see also Sandin v. Conner, 515 U.S. 472, 484 (1995). "Atypical and significant" is generally ascertained "by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 ( 3d Cir. 1997). Courts in this circuit have ruled that several months of disciplinary confinement do not rise to the level of an "atypical and significant hardship" upon an inmate, let alone 45 days. See, e.g., Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (allegation of false disciplinary report resulting in seven months of disciplinary confinement not sufficient to constitute a due process deprivation)[2]. Therefore, the defendants' motion to dismiss should be granted on this basis as well.

---

[2]The defendants also argue that the plaintiff had no constitutionally protected interest in his prison job which he lost as a result of the misconduct. The plaintiff indicates in his opposing brief that he takes no issue with the loss of his job.

Moreover, as discussed above, the plaintiff had an adequate post-deprivation remedy with respect to the loss of his property and, therefore, has no due process claim on that basis.

Moreover, the defendants argue that the supervisory defendants are not liable for the alleged civil rights violations in which they had no personal participation. (Doc. No. 20, pp. 7-8).

The plaintiff's complaint alleges that defendant Collins violated the plaintiff's due process rights when he did not favorably respond to the plaintiff's appeals of his misconduct and grievances related thereto. He further alleges that defendant Smeal did not take adequate action with respect to his complaints. To state a claim under §1983, the plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997); Maine v. Thiboutot, 448 U.S. 1 (1980). It is well-established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; [and] liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Accordingly, "participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." See Mincy v. Klem, 2011 WL 846080 (M.D. Pa., Mar. 8, 2011) (Conner, J.) (holding that participation in the misconduct appeal process or disposition of a grievance is insufficient to establish personal involvement, and as a result, summary judgment in favor of the defendants' alleged constitutional violations was appropriate) (collecting cases). The only allegations against defendants Smeal and Collins are that

10

they were involved in the after-the-fact reviews of the plaintiff's complaints relating to the confiscation of his property. Therefore, the defendants' motion to dismiss should be granted on this basis as well.

Finally, the defendants argue that Eleventh Amendment immunity bars plaintiff's claims for monetary damages against the defendants in their official capacity. (Doc. No. 20, pp. 8-9).

With respect to this argument, although the plaintiff initially indicated in his complaint that the defendants were being sued in their individual and official capacities, in his opposing brief, the plaintiff indicates only that the defendants are being sued in their individual capacities. (Doc. No. 24, p. 7). The court presumes, therefore, that the plaintiff no longer wishes to proceed against the defendants in their official capacity. However, even to the extent that he does, the court agrees with the defendants. Federal courts can not consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985); Edelman v. Jordan, 415 U.S. 651, 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir.1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power."

Chittister v. Dep't. of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir.2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." Laskaris, 661 F.2d at 25 (citing Pa. Cons.Stat. Ann. §§ 8521(b)). Additionally, §1983 does not abrogate the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 345 (1979). Further, an essential element of any claim under §1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under §1983." Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). Therefore, to the extent that the plaintiff wishes to proceed against the defendants in their official capacity, his complaint should be dismissed.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendants' motion to dismiss the plaintiff's complaint, **(Doc. No. 17)**, be **GRANTED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: February 6, 2012**

O:\shared\REPORTS\2011 Reports\11-0731-01.wpd